IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| UNITED STATES OF AMERICA | |
|---|---|
| v. | CRIMINAL ACTION FILE |
| HERBERT JONATHAN CASTILLO JUAREZ and PAOLA VALENZUELA AREVALO, | NO. 1:16-CR-341-MHC-CMS |
| **Defendants.** | |

## ORDER

This action comes before the Court on the Final Report and Recommendation ("R&R") of Magistrate Judge Catherine M. Salinas [Doc. 323] recommending that the following motions be denied: Valenzuela's Preliminary Motion to Suppress Statements [Doc. 175]; Valenzuela's Preliminary Motion to Suppress Evidence [Doc. 176]; Castillo's Initial Motion to Suppress [Doc. 183]; and Defendants' Motions to Exclude "Photo Show-Up" and In-Court Eyewitness Identification [Docs. 187 & 223]. The Order for Service of the R&R [Doc. 324] provided notice that, in accordance with 28 U.S.C. § 636(b)(1), the parties were authorized to file objections within fourteen (14) days of the receipt of that Order.

On January 11, 2019, Defendants filed their "Joint Objections" to the R&R [Doc. 344] ("Defs.' Objs."). However, Castillo previously asked for an additional thirty (30) days in which to file his own objections to the R&R, and joined Valenzuela's objections "in an abundance of caution." Id. at 1 n.1. The Court granted Castillo and additional period of time, to and through February 25, 2019, in order to file any separate objections [Doc. 345]. However, no additional objections were filed by Castillo, so the Court considers the objections to be jointly raised.

I. **LEGAL STANDARD**

In reviewing a Magistrate Judge's R&R, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988)). If there are no specific objections to factual findings made by the Magistrate Judge, there is no requirement that those findings be reviewed *de novo*. Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993) (citations

omitted). Absent objection, the district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1), and may accept the recommendation if it is not clearly erroneous or contrary to the law. FED. R. CRIM. P. 59(a). In accordance with 28 U.S.C. § 636(b)(1) and Rule 59 of the Federal Rules of Criminal Procedure, the Court has conducted a *de novo* review of those portions of the R&R to which Defendant objects and has reviewed the remainder of the R&R for plain error. See United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

## II. DISCUSSION

### A. Motions to Suppress Statements and Evidence Taken in Switzerland

It is undisputed that at the time of their arrests by Swiss authorities in August 2016 on attempted trafficking of cocaine, Defendants were citizens and residents of Guatemala and had no attachment to the United States. Defendants contend that they nevertheless have standing to object to the search, seizure, and taking of statements by Swiss authorities because agents of the United States "were substantially involved so as to convert the seizure and search into a joint United States/Switzerland law enforcement venture." Defs.' Objs. at 3. The Magistrate Judge concluded that: (1) because the Fourth Amendment does not apply to searches conducted outside the United States where the person has no significant

3

connection to the United States, Defendants have no standing under the Fourth Amendment to challenge the admission of evidence gathered by Swiss law enforcement officers after their arrest in Switzerland; (2) even if Defendants had standing to challenge the evidence seized by Swiss authorities, the Fourth Amendment's exclusionary rule would not apply to the arrests and searches made by Swiss law enforcement officers in Switzerland; and (3) Defendants have made no showing that the facts in this case shock the conscience or that the United States and Switzerland participated in a "joint venture," such that a Fourth Amendment challenge would lie. R&R at 8-10.

In their objections, Defendants maintain they have standing to challenge the search and seizure undertaken by Swiss authorities because "[i]t is hard to believe" that those authorities were not acting "jointly with and under the direction of" United States Homeland Security ("HSI") agents. Defs.' Objs. at 3-4. Defendants also complain that the Magistrate Judge improperly denied them an evidentiary hearing on their motions to suppress. Id. at 2.

The Supreme Court has held that the Fourth Amendment does not apply to searches of a nonresident alien conducted outside the United States where the person has no voluntary attachment to the United States. United States v. Verdugo-Urquidez, 494 U.S. 259, 274-275 (1990). See also United States v.

Rosenthal, 793 F.2d 1214, 1230-1231 (11th Cir. 1986) ("Evidence obtained by foreign police officers from searches carried out in their own countries is generally admissible in American courts regardless of whether the search complied with the Fourth Amendment."). Consequently, the Magistrate Judge's determination that Defendants have no standing to challenge the search and seizure of evidence by Swiss authorities in Zurich, Switzerland is correct.

There are two exceptions recognized by the Eleventh Circuit where this Court could apply the Fourth Amendment exclusionary rule to foreign searches: "(1) if the foreign officers' conduct shocks the conscience of the American court and (2) if American officials participated in the foreign interrogation, or if the foreign authorities were acting as agents for their American counterparts, also known as the joint venture doctrine." United States v. Frank, 599 F.3d 1221, 1228-1229 (11th Cir. 2010) (internal punctuation and citations omitted). The first "exception is based on a federal court's inherent supervisory powers over the administration of federal justice." United States v. Emmanuel, 565 F.3d 1324, 1330 (11th Cir. 2009) (internal quotation and citations omitted). The second exception "is based on a defendant's Fourth Amendment rights." Id.

Defendants contend that both exceptions apply. Defs.' Objs. at 3-5. First, Defendants summarily conclude that "[i]t shocks the conscience to subject foreign

5

nationals to extreme punishments for alleged violations of U.S. drug laws" which is akin to "taxation without representation." Id. at 5. However, in this case, it is undisputed that, when Defendants arrived at the Zurich airport, Swiss police officials determined that Defendants were carrying narcotics inside their bodies based upon field interviews and a body scan, and that Defendants later passed "approximately fifty (50) capsules each that was field tested positive for cocaine." HSI Report of Investigation [Doc. 188-2]. This Court agrees with the Magistrate Judge that "there is nothing shocking about Swiss officials arresting narcotics traffickers carrying cocaine in their bodies" or "examin[ing] people in the airport for narcotics." R&R at 9.

Second, Defendants assert that HSI agents "were substantially involved" in the search and seizure by Swiss officials based solely upon an email that was sent by a HSI special agent to the Swiss police alerting them to the fact that Defendants would be arriving that day at the Zurich airport and might be carrying cocaine. Defs.' Objs. at 3-4. Although there is some evidence to indicate that Swiss officials never received this email "tip" because it got caught in a spam email box, see HSI Report of Investigation, the tip, even if received, would not constitute American officials becoming "substantial participants" in the search or that the Swiss authorities were "acting as agents" of the HSI. Rosenthal, 793 F.2d at 1231;

6

see also United States v. Behety, 32 F.3d 503, 511 (11th Cir. 1994) ("Agent Von Bresen's communication to Guatemalan authorities regarding [the defendants' arrival on a yacht] and plans to export cocaine is insufficient to bring the search within the [joint venture] exception."); United States v. Hawkins, 661 F.2d 436, 455-56 (5th Cir. 1981) (finding that DEA's notice to Panamanian authorities regarding the suspected crash of an airplane carrying cocaine is insufficient to trigger Fourth Amendment protections); United States v. Heller, 625 F.2d 594, 599-600 (5th Cir. 1980)[1] (finding that a tip from United States officials to British police regarding the defendant was "peripheral at most" to the defendant's arrest and search); United States v. Morrow, 537 F.2d 120, 140 (5th Cir. 1976) ("Normal lines of communication between the law enforcement agencies of different countries are beneficial without question and are to be encouraged. Criminal conspiracies, as this case amply demonstrates, are sometimes international in scope, and the routine transmittal of the name and telephone number of a possibly

---

[1] The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

valuable informant across national borders clearly is permissible under the fourth amendment.").

Consequently, Defendants' objections to the Magistrate Judge's recommendation regarding the requested suppression of statements and evidence that occurred in Switzerland are **OVERRULED**.[2]

B.   **Motions to Suppress Testimony of Photographic Identifications**

Defendants object to the Magistrate Judge's recommended denials of their motions to suppress photographic identification testimony from four co-Defendants. Defs.' Objs. at 6-12.

> In assessing the constitutionality of a district court's decision to admit an out-of-court identification, we apply a two-step process. United States v. Diaz, 248 F.3d 1065, 1102 (11th Cir. 2001). We first examine whether the identification procedure was unduly suggestive. Id. A pretrial identification procedure is impermissibly suggestive "when the police have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of the crime." [United States v.] Elliot, 732 F.3d [1307,] 1309-10 [(11th Cir. 2013)].

---

[2] Because Defendants' allegations are conclusory with respect to the two exceptions to the general rule that the Fourth Amendment does not apply to a search of a nonresident alien conducted outside the United States, the Magistrate Judge also did not err in denying an evidentiary hearing on the motions to suppress statements and evidence. See United States v. Richardson, 764 F.2d 1514, 1527 (11th Cir. 1985) ("A court need not act upon general or conclusory assertions founded on mere suspicion or conjecture, and the court has discretion in determining the need for a[n evidentiary] hearing.").

8

> Where no improper police conduct exists, exclusion of the out-of-court identification is unnecessary. Id. at 1310.
>
> If we conclude, however, that the identification procedure was unduly suggestive, we then consider whether—given the totality of the circumstances—the identification was reliable nonetheless. Diaz, 248 F.3d at 1102. Under this second step, we consider five factors in determining the reliability of a witness's identification: opportunity to view, degree of attention, accuracy of the description, level of certainty, and length of time between the crime and the identification. Neil v. Biggers, 409 U.S. 188, [198] (1972).

United States v. Williams, 688 F. App'x 895, 896-97 (11th Cir. 2017) (parallel citations omitted). Because Defendants' objections involve photographic identifications made by four co-Defendants, this Court will review those objections individually.

### 1. Clifford Waldthausen

This Court agrees with the Magistrate Judge that Defendants' challenge to Waldthausen's identification is frivolous. R&R at 19-20. After Waldthausen's arrest, it was Waldthausen himself who admitted ingesting drugs for transport, advised the special agent that he was working for a married couple known to him personally as Paola and Jonathan, voluntarily pulled up the Facebook accounts for the couple on his own phone, and showed the special agent the Facebook profile photographs of Defendants. Tr. of Aug. 28, 2018, Evidentiary Hr'g [Doc. 289] ("Tr.") at 13-14, 31. Defendants cite no case where a court held that an

9

individual's out-of-court identification was unduly suggestive or unreliable in the situation where the individual volunteers information concerning his personal knowledge of the identity of the person whose photograph the suspect then produces voluntarily on his own phone. Defs.' Objs. at 6, 11.³

### 2. Luis Sarti-Gomez

Defendants contend that the Magistrate Judge's recommendation as to the identification made by Sarti should be rejected on the basis that it was unduly suggestive (because he was shown only a single photograph) and that his description of Defendant Valenzuela was inaccurate. Defs.' Objs. at 7, 11. While it is true that courts have concluded that showing a witness only one photograph is unduly suggestive, Manson v. Brathwaite, 432 U.S. 98, 108-09 (1977); United States v. Cannington, 729 F.2d 702, 711 (11th Cir. 1984), courts

---

³ The fact that Waldthausen gave no prior description of Defendants prior to volunteering their photographs is not an indication of unreliability where Waldthausen provided detailed information to the agent regarding his personal knowledge of Defendants:

> He told me that he was working for a man and wife named Paola and Jonathan, and that he was aware of their Facebook accounts, and he showed me their Facebook accounts, and on each of their Facebook accounts, there were profile pictures, and he indicated that those profile pictures were the real pictures of two individuals he was working for[,] Paola and Jonathan.

Tr. 13.

still proceed to analyze whether the totality of the circumstances establish reliability to determine whether the evidence should be suppressed. See, e.g., United States v. Walls, 237 F. App'x 599, 601 (11th Cir. 2007) (assuming, without deciding, that the use of single photograph was unduly suggestive, but nevertheless denying suppression because the evidence demonstrated that the identification was reliable).

The totality of the circumstances in this case establish reliability. At the time of his arrest, Sarti stated he met with "Paola" and "Tito" three to four times, gave a partial description of "Paola," and identified the Facebook profile pictures that Waldthausen previously selected as the Defendants. Tr. at 15-17. Sarti then made monitored telephone calls and sent text messages to Defendants, there were photographs of Sarti on Defendant's phones, and Sarti volunteered information that Defendants were traveling to Switzerland to smuggle drugs (information that proved accurate). Id. at 68-69. In addition, Sarti had the opportunity to view Defendants on three to four occasions during the commission of a crime, he was certain as to his identification of the Defendants, and the time between his personal contact with Defendants and his identification was not long. Biggers, 409 U.S. at 198. Moreover, because Sarti knew Defendants prior to being shown the photographs, the likelihood of misidentification was substantially less. See United

11

States v. Burgos, 55 F.3d 933, 942 (4th Cir. 1995) (finding that the likelihood of misidentification is substantially less when a witness is asked to identify someone with whom he is acquainted, rather than a stranger).

### 3. Angel Bojorquez-Amaya

The special agent in this case during a proffer session with co-Defendant Bojorquez showed him a stack of twenty-five photographs of various individuals, both men and women, one at a time, who the agent suspected were involved in the drug conspiracy, including official photographs of Defendants obtained from the local police in Guatemala, none of which resembled one another. Tr. at 20-21, 39-40. Bojorquez immediately identified the picture of Defendant Valenzuela as "Claudia," a woman that he was trafficking drugs for, and the picture of Defendant Castillo as Claudia's husband, who Bojorquez was also working for. Tr. at 22, 70-72.

Defendants contend that the stack of photographs presented to Bojorquez was "unduly suggestive" because Defendant Valenzuela was "only one of six women depicted in the group of photos, and the other five women lacked similar facial features, body types or hairstyles[.]" Defs.' Objs. at 7. This Court agrees with the Magistrate Judge that there was nothing suggestive about this procedure. R&R at 23. See United States v. Jones, 872 F.3d 483, 492 (7th Cir. 2017) (finding

nothing unduly suggestive where agent placed the defendant's photograph in the top three of a stack of six photos); United States v. Triplett, 104 F.3d 1074, 1080 (8th Cir. 1997) (concluding that identification procedure was not unduly suggestive where a stack of photographs were in random order and detectives did not indicate that any particular photo should be selected); United States v. Fernandez-Flores, No. 10CR312 WQH, 2010 WL 3212139, at *6 (S.D. Cal. Aug. 12, 2010) (concluding that the identification was not unduly suggestive where "the twenty-eight photos were taken and presented in a similar manner . . . and there was no efforts to suggest one photo over another."); United States v. Palmer, No. CRIM 89-0036, 1989 WL 1170001, at *9 (D.D.C. June 8, 1989) (concluding that the procedure was not unduly suggestive where a stack of at least twelve photographs were shown to each witness, they were asked to identify only those persons they knew were part of a drug trafficking organization, and there was never a misidentification).

In addition, even if the procedure was unduly suggestive, the totality of the circumstances indicates that Bojorquez's identification of Defendants was reliable:

> [Bojorquez] spent like an evening at a nightclub with Claudia. He also met Claudia and her husband, the Defendants here today, at an office or empty apartment in Guatemala where they discussed the drug trafficking trip, and he also met them, I think, either outside or nearby one of the travel agencies they used to book the drug

13

trafficking trips, and then he met Ms., Valenzuela Arevalo again at her home the day that he smuggled drugs into the United States.

Tr. at 71. There were also photographs of Bojorquez on Defendants' cell phones. Id. at 72.

### 4. Franco Teza-Mendez

The special agent also spoke at a proffer session with Co-Defendant Teza, who Bojorquez said introduced him to Claudia. Tr. at 22. The agent showed Teza a stack of about ten photographs of various individuals, including both men and women, one at a time, who the agent suspected were involved in the drug conspiracy, none of whom resembled one another, and which included official photographs of Defendants obtained from the local police in Guatemala. Id. at 23. Teza immediately identified the photograph of Defendant Valenzuela as a woman he knew as "Licenciada," who was introduced to him by a man named "Pepe" for whom he was trafficking drugs. Id. at 24-25. Teza also immediately identified the photograph of Defendant Castillo as "Jona," who was at the same meeting. Id. at 25, 73-74.

Defendants contend that the stack of photographs provided to Teza was "more egregious than those used with" Bojorquez because there were only ten photographs and two women represented, one of whom bore no resemblance to Valenzuela. Defs.' Objs. at 8. However, for the same reasons as discussed with

14

respect to the photo identification process used with Bojorquez, this Court agrees with the Magistrate Judge that the procedure was not unduly suggestive. R&R at 23. In addition, as with Bojorquez, even if the procedure was unduly suggestive, the totality of the circumstances indicates that Teza's identification of Defendants was reliable. Tr. at 22-25. There were also text messages on Teza's cell phone discussing the airplane trip that Defendants took to Switzerland prior to their arrest and photographs of Teza on Defendants' own cell phones. Id. at 73-74.

Therefore, Defendants' objections to the Magistrate Judge's recommendation that testimony regarding the various photographic identifications should not be suppressed are **OVERRULED**.

## III. CONCLUSION

Accordingly, after a *de novo* review of those portions of the R&R to which Defendants object, the Court **OVERRULES** their objections [Doc. 344]. Finding no clear error in the remaining portions of the R&R, the Court **ADOPTS** the R&R [Doc. 323] as the Opinion and Order of the Court.

It is hereby **ORDERED** that Valenzuela's Preliminary Motion to Suppress Statements [Doc. 175]; Valenzuela's Preliminary Motion to Suppress Evidence [Doc. 176]; Castillo's Initial Motion to Suppress [Doc. 183]; and Defendants'

Motions to Exclude "Photo Show-Up" and In-Court Eyewitness Identification [Docs. 187 & 223] are **DENIED**.

It is further **ORDERED** that the time between the date the Magistrate Judge certified Defendant ready for trial on January 11, 2019, and the issuance of this Order, shall be excluded in calculating the date on which the trial of this case must commence under the Speedy Trial Act because the Court finds that the delay is for good cause, and the interests of justice in considering Defendant's objections to the Report and Recommendation outweigh the right of the public and the right of the Defendant to a speedy trial, pursuant to 18 U.S.C. § 3161, *et seq*. Moreover, as proceedings involving co-Defendant Lougee are still pending before the Magistrate Judge, this Court need not schedule the trial for Defendants Valenzuela and Castillo at this time. See 18 U.S.C. § 3161(h)(6) (excluding for speedy trial purposes "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted.").

**IT IS SO ORDERED** this 4th day of April, 2019.

_____
MARK H. COHEN
United States District Judge